Jeffrey v. Owen.

## JOHN JEFFREY ET AL. v. HENRY E. OWEN.

1. Consent of parties, annexed to the statement of facts returned to a writ of *certiorari*, directed to the Court of Common Pleas, in matter of an appeal from a justice's court, that this court may determine questions of fact, and may draw any inference which a jury might draw from the facts returned, will not induce this court to try the case upon the merits. On *certiorari* to a justice's court, or the Court of Common Pleas, on appeal, this court will not determine disputed questions of fact, or retry the case on the merits.

2. The jurisdiction of a justice of the peace, in an action of trespass to lands, extends no further than to enable him to try the fact of possession: he has no jurisdiction to inquire into the title to lands, or into the right of possession. If the plaintiff can maintain his right to sue in trespass, by proof of actual possession, the action is cognizable in a justice's court; but if the possession is constructive merely, and can only be shown by the production of title, the justice has no jurisdiction.

3. In an action of trespass in a justice's court, the title deeds of the parties are not competent evidence "as descriptive of the boundaries within which possession was claimed," or to show the extent of the parties' possession. *Winter* v. *Peterson*, 4 *Zab.* 524, commented on and explained.

On *certiorari* to Monmouth Pleas, to remove a judgment on appeal from a justice's court.

Argued at February Term, 1879, before Justices DALRIMPLE, DEPUE and SCUDDER.

For plaintiff in *certiorari*, P. Bentley.

*Contra*, R. Allen, Jr.

The opinion of the court was delivered by

DEPUE, J.　The Court of Common Pleas, in obedience to this writ of *certiorari*, returns to this court the facts proved at the trial. To the statement of facts is appended permission to determine questions of fact, in the following words:

" From the above facts the court may draw any inference which a jury might draw." On *certiorari* to a justice's court, or the Court of Common Pleas on appeal therefrom, this court will not determine disputed questions of fact, or retry the case on the merits. We can only review the proceedings removed by the writ, with respect to alleged error in law in the admission or rejection of evidence, or in the legal prin- ciples adopted by the court below in deciding the case. ·

Owen sued Jeffrey for a trespass on his lands, in tearing down and removing a bath-house. The *locus in quo* is situate on the Navesink river, and lies between the south edge of the river and the top of the bank extending along the river. It is evident from the description of the *locus in quo* in the state- ment of demand, the evidence and maps used at the trial, that the controversy relates to lands lying along the river below the high water line reached by the storm tides.

The premises appear to have been part of a tract of one hundred and ten acres, once belonging to Sarah Salter and others. The Salters, in 1835, conveyed to Borden Hance and others, by a deed describing the premises as bounded on the north by the Navesink river, and on the south by the Shrewsbury river. The bath-house was erected by the plain- tiff in June, 1878, and was taken down and removed by the defendant in the succeeding month of July. The plaintiff gave no evidence of any act of possession on his part, except in the erection of the bath-house, which he never used. To support his right to maintain an action of trespass, and recover therein, he proved that Borden Hance had on some occasions taken seaweed from the *locus in quo*, and that his heirs, after his death, and five years before the suit was brought, carted therefrom several loads of sand. He also offered in evidence the deed from the Salters to Borden Hance and others, above referred to, and proved that Hance lived on the tract con- veyed, in a dwelling-house about a quarter of a mile from the *locus in quo*, and that he cultivated the arable lands until his death. This deed was offered " as evidence of Owen's possession." It was received by the court against the defend-

ant's objection, "as descriptive of the boundaries within which possession was claimed."

This deed was improperly admitted in evidence. The plaintiffs' counsel sought to justify its admission, on the ground that possession by the owner of the legal title is presumed to be co-extensive with the boundaries contained in his title deeds. The principle thus stated is undoubtedly sound, and has been established by a uniform course of decision of long standing. But it is not applicable to the point in issue in this case. By the statute creating the courts for the trial of small causes, the jurisdiction of justices of the peace is expressly excluded in actions "wherein the title to any lands, tenements, hereditaments or other real estate shall or may in any wise come in question." *Rev., p.* 538, § 1. Possession is either actual or constructive : actual, where the party is in the immediate occupancy ; constructive, where he holds by virtue of his title, without actual occupancy. 2 *Bouv. L. Dic.* 352. Possession which, as an inference of law, arises presumptively from the legal title, is a mere constructive possession, and is founded on the existence of title in some form.

The jurisdiction of a justice of the peace extends no further than to enable him to try the fact of possession—*pedis possessio.* He has no jurisdiction to inquire into the title to lands, or into the right of possession. He can only take cognizance of possession as a question of fact. Where the plaintiff can maintain his right to sue in trespass, by proof of actual possession, which the justice may determine upon evidence of facts, without any inquiry into title, the action is cognizable in a justice's court; but if the possession be merely constructive, and can be shown only by proof of title, the justice has no jurisdiction. If documentary or other evidence relating to title be relied on, which the justice cannot adjudicate upon, another tribunal must be resorted to. *Gregory* v. *Kanouse,* 6 *Halst.* 62 ; *Hill* v. *Carter,* 1 *Harr.* 87 ; *Campfield* v. *Johnson,* 1 *Zab.* 83 ; *Dickerson* v. *Wadsworth,* 4 *Vroom* 357.

The difficulty is not removed by admitting the title deeds·

as evidence merely of the fact of, or of the extent of, possession. If offered for either of these purposes, their validity must necessarily be liable to be assailed. In cases of disputed boundaries, the controversy generally arises from the overlapping of titles. If one party may offer his deed in evidence, so may the other. If a plaintiff, who is out of possession of the disputed strip, may sue in a justice's court, and offer his deed in evidence, together with evidence of the possession of other parts of the premises conveyed by it, as proof of his possession of the disputed part, the defendant, having possession, will be put at a disadvantage. He must plead title, give bond and yield the advantages arising from possession. In cases where the fact of possession is in dispute, the admission of the title deeds of one or both of the parties will almost inevitably divert the litigation from the mere fact of possession into the determination of questions of title.

In *Winter* v. *Peterson*, 4 *Zab.* 524, the plaintiff's deed was received in an action of trespass, in a justice's court, for the purpose of showing the boundaries of the farm of which he was in possession. The circumstances of that case were peculiar. The action was for cutting down a tree within the limits of a public highway. It is undeniable that the office of the deed in the evidence was to show title in the plaintiff to the *locus in quo*, which could be determined by the justice only by deciding the legal effect of the conveyance, as deduced from its terms. The *locus in quo* being within the highway, did not admit of actual possession by the plaintiff, or anyone else. If the case can stand well with the words of the statute, and with other decisions of this court, it must be supported on that special ground. It cannot be admitted as a precedent for the introduction of a deed as proof of possession, where the case disclosed is one of disputed possession.

But if the title deed of Hance, and the acts of possession of Hance and his heirs, in other parts of the tract of land described in it, by residing on it, and cultivating it, would, under any circumstances, be regarded as competent evidence in a dispute in relation to the *locus in quo*, they cannot avail

the plaintiff. He shows no title from Hance to himself, in virtue of which he could succeed to his rights, or the rights of his heirs. An inspection of the map shows that the portion of the one hundred and ten acre tract, which the plaintiff claims, lies exclusively between ordinary high water mark and the bank up to which the storm tides reach. The evidence does not disclose that the plaintiff was ever in possession of that lot, or of any part of the residue of the tract. There was no proof of possession by him, such as, independent of title, would enable him to maintain trespass, and he cannot, in a justice's court, rely on title for that purpose.

The plaintiff also offered in evidence a deed, made by one Sharpstein to the defendant, in March, 1850, under which the defendant acquired title to his lot. The premises conveyed were situate on the bank adjoining the *locus in quo*, and the deed was offered for the purpose of showing that the defendant's possession did not include the *locus in quo*. It was under an objection by the defendant, admitted by the court as descriptive of the boundaries within which possession was claimed by the defendant. The defendant's deed for an adjoining lot had no relevancy to the only material issue in the cause—possession in fact of the premises in question. It should have been excluded.

If the defendant's deed was legitimately in evidence, the suit should have been dismissed 'for want of jurisdiction in the court. *Messler* v. *Fleming, ante p.* 108. As evidence of constructive possession by the defendant, presumptively coextensive with the limits of the grant, it directly presented a question of title. The property conveyed is described as situate, lying and being on the bank of the Navesink river. The beginning corner is " in the line of John Hance, near the top or edge of the bank on the river ; " then by several courses and distances inland, and returning " to the top of the bank ; " then in a straight course to the place of beginning. The state of the case shows that the " storm tides " wash the shore to the bank. What is the effect of a conveyance of lands described as " situate, lying and being on the bank " of a tidal

stream, with a call for courses and distances "to the top of the bank?" Under such a description does the title of the grantee stop at the edge of the bank? Does it reach the limit of the high spring tides happening at the two equinoctials, or of the high spring tides occurring twice every month, or does it extend to the line of medium or ordinary high tide? This is a question of construction to be decided upon the rules of the English common law as modified by our local common law, and by the wharf act. It involves matters relating to the title to lands. The court could not consider the effect of the deed as evidence of the boundaries within which possession under it was to be presumed, until it first decided the legal effect of the deed as a conveyance of title, and over that subject the court had no jurisdiction.

From an examination of the state of the case, it is apparent that the case was tried and decided by the court below exclusively on a question of title. The plaintiff offered no evidence of possession by himself of the *locus in quo*. It appeared in proof that the defendant took possession of his house and lot on the bank soon after the date of his deed; that he graded down the bank, and removed a fence which stood on the top of the bank, and re-set it several feet lower down towards the shore, and built a division fence between him and an adjoining owner on the north side, extending about eighteen feet below the bank towards the river; that he planted trees on the shore, about six feet below the bank, which are still standing, and another row, still lower down, which were killed by the tides; that he moored his fishing boats on the shore, and used a seine there, which he dried on stakes standing on the shore, and that he frequently gathered seaweed on the shore. The evidence of actual possession by the defendant was plenary, and the case could not have resulted adversely to him unless the court decided against him upon a question of title.

The judgment should be reversed.